## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NATIONAL ASSOCIATION FOR GUN RIGHTS**
**and FOSTER ALLEN HAINES,**

     **Plaintiffs,**

**vs.**                                                                  No. 1:23-cv-00771-DHU-LF

**MICHELLE LUJA GRISHAM, in her official**
**capacity as the Governor of the State of**
**New Mexico and PATRICK M. ALLEN, in**
**his official capacity as the Secretary of the**
**New Mexico Department of Health,**

     **Defendants.**

**and**

**RANDY DONK,**
**GUN OWNERS OF AMERICA, INC.**
**GUN OWNERS FOUNDATION,**

     **Plaintiffs,**

**vs.**                                                                  No. 1:23-cv-00772-DHU-LF

**MICHELLE LUJAN GRISHAM, in her official**
**capacity as the Governor of New Mexico,**
**PATRICK M. ALLEN, in his official capacity**
**as the Cabinet Secretary of the New Mexico**
**Department of Public Safter and TROY W.**
**WEISLER, in his individual capacity as the**
**Chief of the New Mexico State Police,**

     **Defendants.**

**and**

**WE THE PATRIOTS USA, INC., and**
**DENNIS SMITH,**

     **Plaintiffs,**

vs.                                                    No. 1:23-cv-00773-DHU-LF

**MICHELLE LUJAN GRISHAM, in her
official capacity only,
PATRICK M. ALLEN, in his official capacity only,
JASON R. BOWIE, in his official capacity only,
TROY W. WEISLER, in his individual capacity only,
and HAROLD MEDINA, in his official capacity only,**

      **Defendants.**

**and**

**SHAWN BLAS,**

      **Plaintiff,**

vs.                                                    No. 1:23-cv-00774-DHU-LF

**MICHELLE LUJAN GRISHAM, in her
capacity as the Governor of New Mexico as well as
in her individual capacity, PATRICK M. ALLEN,
in his capacity as the Secretary of the New Mexico
Department of Health as well as in his individual
capacity, OFFICE OF THE GOVERNOR OF
NEW MEXICO and NEW MEXICO DEPARTMENT
OF HEALTH,**

      **Defendants.**

**and**

**ZACHARY FORT,
NEW MEXICO SHOOTING
SPORTS ASSOCIATION,
FIREARMS POLICY COALITION, INC.,
and SECOND AMENDMENT FOUNDATION,**

      **Plaintiffs,**

vs.                                                    No. 1:23-cv-00778-DHU-LF

**MICHELLE LUJAN GRISHAM, individually
and in her official capacity as the Governor of
New Mexico, PATRICK M. ALLEN, individually
and in his official capacity as the Cabinet Secretary**

**for the New Mexico Department of Health,**
**JASON R. BOWIE, individually and in his**
**Official capacity as the Cabinet Secretary of**
**The New Mexico Department of Public Safety**
**and TROY W. WEISLER, individually and in**
**his official capacity as the Chief of the New**
**Mexico State Police,**

      **Defendants.**

### DEFENDANTS' COMBINED RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendants Governor Michelle Lujan Grisham, Secretary Patrick M. Allen, Secretary Jase R. Bowie, and Chief Troy W. Weisler (collectively, Defendants), by and through their counsel of record, hereby submit their Combined Response in Opposition to plaintiffs' motions for temporary restraining orders and preliminary injunctions in cases 23cv0771-DHU-LF, 23cv00772-DHU-LF, 23cv00773-DHU-LF, 23cv00774-DHU-LF, and 23cv00778-DHU-LF, including plaintiffs' Second Emergency Motion for a Temporary Restraining Order and Preliminary Injunction filed in 23cv00773-DHU-LF.   Defendants request the Court deny the motions for the reasons set forth herein.

### Introduction and Background

Having only recently emerged from a global pandemic, New Mexico finds itself in the midst of another public health crisis.  In 2021, the last year for which complete data is available, New Mexico's gun death rate was the third highest in the nation. *Comprehensive Report on Gunshot Victims Presenting at Hospitals in New Mexico*, at 5, N.M. Dep't of Health (Sept. 28, 2023), https://www.nmhealth.org/publication/view/report/8462/ (hereinafter DOH Report).   In a single year (July 2022-June 2023) firearm related Emergency Room visits increased 77% for males aged 0-13; 115% for females aged 14-17, and 32% for males aged 14-17.  *See* DOH Report.  Since

2017, firearm death rates have increased by 91% for American Indian/Alaska Native residents; 78% for Hispanic residents, and 47% overall. *Id.* Staggeringly, New Mexico's firearm injury death rate is 90% higher than the national average. *Id.*

One need look no further than local news coverage to witness the tragic effects of this crisis. On September 6, 11-year-old Froylan Villegas, along with his mother, baby brother, and cousin were returning home from an evening at the Isotopes game when seventeen bullets tore through their car.[1] At least one of those bullets struck Froylan, killing him; another seriously injured his cousin. Unfortunately, this is only one example of how gun violence is acting to destroy the lives of New Mexicans, including children.

In response to this crisis, Governor Michelle Lujan Grisham has made numerous efforts to champion public safety efforts, including increased funding for public safety and law enforcement purposes, and supporting legislation designed to increase public safety.[2] The terrible events described above deprived the Governor of luxury of time to wait and see these efforts yield results. Accordingly, the Governor took more immediate action and issued Executive Orders 2023-130 and 2023-132 invoking her powers under the All Hazard Emergency Management Act (AHEMA), NMSA 1978, §§ 12-10-1 to -10 (2007), and declaring a state of public health emergency due to

---

[1] Alexa Skonieski, *Family, friends grieve 11-year-old shot, killed while leaving Isotopes Park*, KRQE News (Sept. 12, 2023), https://www.krqe.com/news/albuquerque-metro/family-friends-remember-11-year-old-shot-killed-while-leaving-isotopes-park/.

[2] *See, e.g.*, Press Release, *Governor delivers over $40 million for new police officers across New Mexico*, Office of Governor Michelle Lujan Grisham (Sept. 9, 2022), https://www.governor.state.nm.us/2022/09/09/governor-delivers-over-40-million-for-new-police-officers-across-new-mexico/; Press Release, *Gov. Lujan Grisham priority legislation effective today*, Office of Governor Michelle Lujan Grisham (June 16, 2023), https://www.governor.state.nm.us/2023/06/16/gov-lujan-grisham-priority-legislation-effective-today/.

gun violence and drug abuse pursuant to the Public Health Emergency Response Act (PHERA), NMSA 1978, §§ 12-10A-1 to -19 (2003, as amended through 2015).

Shortly thereafter, Department of Health Secretary Patrick Allen issued a public health emergency order imposing certain restrictions on the possession of firearms in cities and counties with high levels of gun violence and implementing various other measures meant to reduce gun violence and drug abuse (hereinafter "PHO"). Plaintiffs sought preliminary injunctive relief to bar enforcement of the PHO, primarily arguing it infringed upon their Second Amendment rights. On September 13, 2023, this Court entered a Temporary Restraining Order ("TRO"), finding that plaintiffs were likely to succeed in arguing that the gun-related restrictions in the PHO violated their Second Amendment rights in light of *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See Nat'l Ass'n for Gun Rights v. Lujan Grisham*, 2023 WL 5951940 (D.N.M. Sept. 13, 2023).

On September 15, 2023, Secretary Allen amended the PHO. *See* Amended Public Health Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures ("Amended PHO"), attached hereto as **Exhibit A**. The Amended PHO states, in relevant part, that

> **No person**, other than a law enforcement officer or licensed security officer, or active duty military personnel shall possess a firearm, as defined in NMSA 1978, Section 30-7- 4.1, **either openly or concealed in public parks or playgrounds, or other public areas provided for children to play in**, within cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023.

As discussed at length below, the Amended PHO is consistent with *Bruen*.

On September 21, 2023, the plaintiffs in 23cv00773-DHU-LF, We the Patriots USA, Inc. and Dennis Smith, filed an updated motion seeking preliminary injunctive relief against the

Amended PHO ("Second Motion").  *See* Doc. 13-1 (23cv00773-DHU-LF).  The Second Motion sought an *ex parte* temporary restraining order and preliminary injunction to bar enforcement of the Amended PHO, claiming that its limited restrictions are still unconstitutional.  *Id*. at 2. On September 29, 2023, the Court entered an Order Denying Temporary Restraining Order and Request for Hearing ("Order"), finding that plaintiffs were unlikely to succeed in demonstrating that the provisions of the Amended PHO pertaining to playgrounds and other public areas provided for children to play in were unconstitutional.  *See* Doc. 15 at 5-6 (23cv00773-DHU-LF).  However, the Court did not reach the issue of the constitutionality of the Amended PHO's firearm restrictions for public parks because that provision had already been enjoined by the Court's September 13 temporary restraining order. *See id.* at 4. Defendants file this response to address the merits of We the Patriots USA, Inc. and Dennis Smith's request for a temporary restraining order regarding the provisions of the Amended PHO applicable to public parks, as well as all plaintiffs' requests for a preliminary injunction related to the original and Amended PHO as a whole.

At the outset, each of plaintiffs' requests for preliminary injunctive relief against the PHO's now-rescinded provisions is moot and not subject to an exception to mootness. Plaintiffs also lack standing to challenge the Amended PHO because most do not specifically allege or assert that they intend to carry firearms in public parks or playgrounds, or other public areas provided for children to play in, and the only plaintiff who attempts to do so only alleges he carries a firearm in Albuquerque's Open Space, which is already proscribed by existing municipal ordinances. For the same reason, plaintiffs cannot demonstrate an irreparable injury. As for the merits of any challenge to the Amended PHO, this Court has already indicated that plaintiffs are simply incorrect regarding the constitutionality of the Amended PHO's provisions relating to playgrounds and other places designated for children to play in and thus cannot demonstrate a likelihood of success on the merits

vis-à-vis those provisions. The same goes for the temporary restriction on firearms in public parks. The regulations on firearms set forth in the Amended PHO are constitutional because they apply to historically "sensitive spaces" and because they are sufficiently analogous to historical regulations as to be consistent with this country's "historical regulation" of firearms.   Accordingly, plaintiffs' motions must be denied.

**Argument & Authorities**

### I.   Plaintiffs' challenges to the original PHO's now-rescinded provisions are moot

The Court lacks subject matter jurisdiction over a moot case.  *Unified Sch. Dist. No. 259 v. Disability Rights Ctr. Of Kan.*, 491 F.3d 1143, 1146-47 (10th Cir. 2007).  "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005) (internal quotation marks and citation omitted).   This is true of actions for declaratory and injunctive relief.  *Unified Sch. Dist. No. 259*, 491 F.3d at 1147.  "The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." *Wyoming v. U.S. Dep't. of Agric.*, 414 F.3d 1174, 1182 (10th Cir. 2000).

It is obvious that the Amended PHO moots plaintiffs' challenges to the PHO.  The Amended PHO superseded the PHO and removed the vast majority of the restrictions plaintiffs sought to enjoin.  "[A]llegations of legal wrongdoing must be grounded in a concrete and particularized factual context; they are not subject to review as free-floating, ethereal grievances." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1111 (10th Cir. 2010).   Given the intervening issuance of the Amended PHO, plaintiffs can no longer point to "some concrete and ongoing injury."  *Id*. at 1112.  Any concerns plaintiffs purport to express about whether additional or different restrictions may be re-implemented at some point in the future are wholly speculative

7

and would require this Court to render an advisory opinion. *See id*. at 1112-1113 (reiterating the impropriety of advisory opinions directed at policy concerns once "ultimate objective" of litigation has been achieved and collecting cases holding the same).   The Amended PHO places the parties in the same situation addressed by the Tenth Circuit in *Rio Grande Silvery Minnow*: "[W]e are not situated to issue a *present* determination with real-world effect because those regulations no longer are operational-for all material purposes, they no longer exist." *Id*. at 1113 (emphasis in original).

True, there are exceptions to the mootness doctrine, but none of those exceptions are implicated in this case. The first recognized exception to mootness is for disputes capable of repetition yet evading review, which occur when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016) (internal quotation marks and citation omitted). The second recognized exception is for cases in which the defendant voluntarily ceases the challenged conduct. *See N.M. Health Connections*, 946 F.3d at 1159. The purpose behind this exception is to counteract gamesmanship aimed at mooting a case before resuming the illegal conduct. *Id.* Thus, the exception does not apply if it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotation marks and citation omitted). In this vein, "although governmental defendants might take action as a direct response to litigation, . . . self-correction again provides a secure foundation for mootness so long as it seems genuine." *Rio Grande Silvery Minnow*, 601 F.3d at 1118 (quoting 13C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3533.7 (3rd ed. 2008)).

Neither exception applies to this case, as there is no *reasonable* expectation that plaintiffs will be subject to the same challenged action again. The Governor and Secretary Allen have no

intent on reimposing the broad restrictions that this Court found likely unconstitutional and that have since been removed from the PHO. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 n.15 (10th Cir. 2010) ("[I]n a mootness analysis courts must undertake to make predictions, including as to the probability of recurrence, and that the process of prediction also is shaped by the character of the defendant—claims of discontinuance by public officials are more apt to be trusted than like claims by private defendants[.]" (internal quotation marks and citation omitted)).[3]

Other than rank speculation, which is insufficient to enliven a moot controversy, there is no indication that Defendants plan to revert to the PHO. Accordingly, the Court should deny plaintiffs' requests for preliminary injunctive relief against the now-rescinded measures in the Original PHO as moot. *See Pleasant View Baptist Church v. Beshear*, 838 Fed. Appx. 936, 938-39 (6th Cir. 2020) (finding challenge to a COVID-19 public health order moot because the order expired and the governor stated he would not issue a similar order in the future); *Maryville Baptist Church, Inc. v. Beshear*, 977 F.3d 561, 566 (6th Cir. 2020) (per curiam) (refusing to apply the voluntary cessation or capable of repetition yet evading review exceptions to mootness to a challenge to an enjoined COVID-19 public health order and observing that "discretion is the better part of judgment when it comes to a potentially premature (and unnecessary) ruling about a moving target"); *Spell v. Edwards*, 962 F.3d 175, 179-80 (5th Cir. 2020) (holding that the "voluntary cessation" and "capable of repetition, yet evading review" exceptions to mootness did not apply to an expired COVID-19 restriction where it is only speculative that the Governor would reimpose

---

[3] Nor is the Court "here presented with a mere informal promise or assurance on the part of the [governmental] defendants that the challenged practice will cease." *Rio Grande Silvery Minnow*, 601 F.3d at 1118 (internal quotation marks and citations omitted). Defendants have taken the concrete step of issuing an Amended PHO that supersedes the PHO and renders it obsolete.

the expired order); *S. Wind Women's Ctr. LLC v. Stitt*, 823 Fed. Appx. 677, 680 (10th Cir. 2020) (concluding that an appeal from a preliminary injunction enjoining Oklahoma from enforcing parts of an executive order as it related to abortions was moot because the order's abortion restrictions expired shortly after the district court granted the preliminary injunction and "Oklahoma no longer seeks to do what the injunction prohibits").

## II.    Most plaintiffs lack standing to challenge the Amended PHO

Plaintiffs in federal civil actions must demonstrate standing to assert their claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560.  The "irreducible constitutional minimum" requirements of standing consist of three elements: (1) the plaintiff must have suffered an "injury in fact"; (2) the injury must be fairly traceable to the actions of the defendant; and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *Id.* at 560-61, 112 S.Ct. 2130 (citations omitted).  To demonstrate injury-in-fact in the context of a future or prospective prosecution, a plaintiff must establish "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  Given the unique requirements imposed by *Bruen* that the Court analyze Second Amendment restrictions as to certain and specific places, plaintiffs must establish standing as to each such "place" where regulations apply.  *Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, 2023 WL 4373260, *5 (D. Md. July 6, 2023); *Antonyuk v. Hochul*, 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022); *Koons v. Platkin*, 2023 WL 3478604 (D.N.J. May 16, 2023).

The only plaintiff who has attempted to demonstrate standing to challenge the Amended PHO's provisions is Dennis Smith. In his challenge to the Amended PHO, Smith alleges that he "engage[s] in recreation on a weekly basis at New Mexico public parks- primarily Los Poblanos

Open Space in Albuquerque, New Mexico."   Doc. 13-1 (23cv00773-DHU-LF).   Smith's Declaration is silent as to any activity, now or in the future, that would involve carrying a firearm to a playground or "other public areas provided for children to play in."   No other facts are set forth in the Second Motion, the complaints, or any other motion to establish standing on behalf of the other plaintiffs as to any of the places set forth in the Amended PHO.   Accordingly, only Smith has standing to challenge the Amended PHO, and even then, only to challenge its application to public parks.   *See, e.g., Maryland Shall Issue*, 2023 WL 4373260, at **5-6.

### III.   Plaintiffs cannot establish that they are entitled to preliminary injunctive relief against the Amended PHO

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (internal quotation marks and citation omitted).[4] To obtain preliminary injunctive relief, plaintiffs must show that "(1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits." *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992).  "The third and fourth factors 'merge' when, like here, the government is the opposing party." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020). Because preliminary injunctive relief is an "extraordinary remedy, . . . the right to relief must be clear and unequivocal." *Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir.

---

[4] "The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order." *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018).

2006). The movant *must* satisfy his or her burden for *each* one of these prerequisites. *See Diné Citizens Against Ruining Our Env't*, 839 F.3d 1276, 1281-82 (10th Cir. 2016).

### A.     Plaintiffs seek a disfavored preliminary injunction

"Because the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," the Tenth Circuit specifically disfavors "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. of Colorado et.al.*, 427 F.3d 1252, 1258-59, (10th Cir. 2005) (internal quotation marks and citation omitted). Therefore, "any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course[,]" and "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms[.]" *O Centro Espirita Beneficente Uniao do Vegetal ("O Centro") v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

Plaintiffs' requested injunctive relief falls into the category of disfavored injunctions. Plaintiffs are requesting the same injunctive relief sought in their Complaint. *See* Doc. 1, pp. 11. Plaintiffs seek virtually all the relief they could be awarded at the end of trial on the merits.[5] *See Peterson v. Kunkel*, 492 F. Supp. 3d 1183, 1193 (D.N.M. 2020) (holding that the plaintiffs'

---

[5] That Plaintiffs also seek nominal monetary damages does not compel a different result. *Cf. Strickland v. Madden Sales & Serv.*, No. 19-918 MV/JFR, 2020 U.S. Dist. LEXIS 95430, at *8 (D.N.M. May 8, 2020) (holding that the defendant's motion for a preliminary injunction seeking enforcement of a non-compete agreement was disfavored because it sought all the relief that it could recover at the conclusion of a full trial on the merits and even though it sought monetary damages, the "primary objective" of its counterclaims was to enforce the non-compete agreement).

requested preliminary injunction was disfavored because it was an exact overlay of the relief sought in their complaint). The requested preliminary injunctive relief is also disfavored because it would require the Court to force Defendants to affirmatively alter the Amended PHO and the State's enforcement of it. *Cf. ETP Rio Rancho Park, LLC v. Grisham*, 522 F. Supp. 3d 966, 1003, 1028 (D.N.M. 2021) (noting that the plaintiffs' request "to prohibit Defendants from enforcing all PHOs" required affirmative action and was therefore disfavored). Thus, this Court should closely scrutinize Plaintiffs' request for preliminary injunctive relief and require Plaintiffs to "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms[.]" *O Centro*, 389 F.3d at 975.

### B.      Plaintiffs cannot demonstrate irreparable harm

As described in his Declaration, Smith's alleged conduct in carrying a firearm in Los Poblanos Open Space is already prohibited by the City of Albuquerque in both its municipal ordinances and administrative rules.[6]  The Albuquerque Code of Ordinances, Chapter 5, Article 8, Section 6 states:

> The following activities are prohibited in any Open Space Lands or Regional Preserves:
>
> . . . .
>
> (G) *Weapons and Firearms.*  No person shall carry, possess, or discharge any firearm … on Open Space Lands or Regional Preserves.

*Id.* Section 5-8-99 makes violations of this article a misdemeanor, and states that, upon conviction of a violation of Section 5-8-6(G), "the weapon or firearm shall be forfeited to the city by order of the Court."

---

[6]      *See    Firearms    &    Hunting*,    City    of    Albuquerque, https://www.cabq.gov/parksandrecreation/resources-rules/open-space-rules-etiquette/firearms-hunting (last visited Sept. 30, 2023).

In 2019 and 2020, the City of Albuquerque issued administrative instructions confirming that New Mexico statutes prohibiting the carrying of deadly weapons (including firearms) on school premises[7] apply to City neighborhood parks, City sports fields, City pools and their parking lots, Balloon Fiesta Park, and Civic Plaza, which are used for school playing areas and other school-related activities, along with other enumerated City properties such as community centers, health and social service centers, and senior centers.[8]   The Amended PHO's firearms restrictions regarding parks does not change these facts and does not make anything illegal that was previously permitted.   As discussed above, plaintiffs utterly failed to identify any public park that the Amended PHO would prohibit them from lawfully entering while carrying a firearm, particularly where the only "park" identified by plaintiffs already prohibits possessing or carrying firearms and has for decades.   *See Valdez v. Lujan Grisham*, 2022 WL 2129071 (10th Cir. 2022) (unpublished) (noting that even if injunction were granted to prohibit enforcement of state vaccine mandate for hospital workers, the plaintiff was still required to be vaccinated under federal law, and thus her "injury . . . is not redressable by enjoining the PHO").   Because Plaintiffs cannot demonstrate that they will be injured at all by enforcement of the Amended PHO, much less irreparably, their Second Motion should be denied.

        **B.**     **Plaintiffs cannot demonstrate a likelihood of success on the merits**

             1.    The Amended PHO is constitutional under *Bruen*

                     a.    <u>Playgrounds and "other public areas provided for children to play in" are "traditionally sensitive places" where firearms can be restricted</u>

---

[7] *See* NMSA 1978 § 30-7-2.1(a); § 2.1(b)(2); § 12.

[8] *See* AI Nos. 5-19, 5-20, https://codelibrary.amlegal.com/codes/albuquerque/latest/albuquerque_nm_admin/0-0-0-33083.

Even if plaintiffs could establish standing to challenge the Amended PHO or demonstrate irreparable injury, the PHO passes constitutional muster under *Bruen*, and plaintiffs cannot demonstrate they are likely to succeed in establishing otherwise.  The exclusion of firearms in "traditionally sensitive places" was recognized and reiterated by the Supreme Court in *Bruen*.  *See* 142 S. Ct. 2111, 2133 (recognizing "longstanding" laws forbidding carrying of firearms "in sensitive places such as schools" and assuming "it settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment").  In the context of "sensitive places," the Court is not required to engage in historical analysis pertaining to regulations on firearms. This is because "some gun-free zones are simply obvious, undisputed, and uncontroversial." Order at 5-6 (quoting *Siegel v. Platkin*, No. CV 22-7464 (RMB/AMD), 2023 WL 1103676, at *10 (D.N.J. Jan. 30, 2023)).

As this Court detailed in its Order, the Supreme Court specifically deemed "schools" to be "sensitive places" where carrying firearms could be regulated consistent with the Second Amendment.  *Id*.; *see Bruen*, 142 S.Ct. at 2133.  Courts examining the contours of this statement have held that "schools" encompasses both elementary and public schools, as well as private schools and institutions of higher education, in part because *Bruen* drew no distinction between public or private schools and did not reference any limitations based on the age of the students attending a school.  *See, e.g.*, *Maryland Shall Issue*, 2023 WL 4373260, at *9.  The same is true of other areas where children are frequently present in large numbers, including playgrounds, areas where youth sporting events are held, and similar spaces.  There are clear analogues between schools and public playgrounds and "other public places provided for children to play in."  *See* Order at 6; *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 324 (N.D.N.Y. 2022), *reconsideration denied sub nom. Antonyuk v. Nigrelli*, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022) (finding that ban on

firearms in public playgrounds "finds support in those historical analogues prohibiting firearms in schools given that, by their very nature, both places often contain children"); *Koons v. Platkin*, 2023 WL 3478604, at *85 (D.N.J. May 16, 2023) (finding that youth sport events fall within the sphere of schools, where firearm bans are presumptively lawful).[9]  As the Court noted in its Order, the Court can "assume it settled" that playgrounds are "sensitive places" under *Bruen*'s analysis, and it is not a significant leap to include "other public places provided for children to play in." Order at 6.   Accordingly, the Amended PHO's provisions banning firearms possession in playgrounds and other public places provided for children to play in is constitutional.

> 2.   The Amended PHO's restriction on firearm possession in public parks is consistent with historical restrictions on firearm possession in public parks and their historical analogues

For areas that are not "traditionally sensitive places," *Bruen* calls for a different analysis, which requires the government to proffer evidence that a regulation is consistent with "this Nation's historical tradition of firearm regulation" so that the Court can determine how "the Second Amendment's historically fixed meaning applies to new circumstances[.]" *Bruen*, 142 S. Ct. at 2132; see Order at 6.   Given the application of historical principals to modern situations, this analysis "will often involve reasoning by analogy" and "[l]ike all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are **relevantly similar**." *Bruen*, 142 S. Ct. at 2132 (emphasis added) (internal quotation marks and citation omitted).  To determine

---

[9] Plaintiffs erroneously lump analysis of all the "places" set forth in the Amended PHO together and cite *Koons and Atonyuk* as though they made the same error and thus support plaintiffs' contention.  *See* Doc. 13-1 at 18.   However, both the *Koons* and *Antonyuk* courts analyzed playgrounds *separately* from public parks, and concluded that playgrounds (and in *Koons*, youth sports events) were either sensitive places where firearm bans were presumptively lawful, *see Koons*, 2023 WL 3478604, at *82, or that such bans were constitutional under *Bruen*. *See Antonyuk*, 639 F.Supp.3d at 324.

whether regulations are "relevantly similar under the Second Amendment," the Court must look "toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 2132–33.  "[A]nalogical reasoning requires only that the government identify a well-established and representative **analogue**, not a historical **twin**. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* (emphases in original).

In *Mayland Shall Issue*, the court found that that the historical record demonstrated "a history of restricting firearm possession and carrying in public parks and at locations where large numbers of people engaged in recreation."  2023 WL 4373260, at *10-12.  The court specifically identified dozens of state and local regulations restricting the possession or carry of firearms in public parks or their historical analogues, including firearm bans in parks in the five largest cities in the United States.  *Id*. at *11.[10] The court explained: "As to public parks, numerous historical statutes and ordinances from the time period before and following the ratification of the *Fourteenth Amendment* imposed such restrictions in relation to parks." *Id*. The court identified examples of prohibiting gun carrying in parks in Central Park in New York City, Fairmount Park in Philadelphia, Pennsylvania, parks in Detroit, Michigan, Chicago, Illinois, Saint Paul, Minnesota, Williamsport, Pennsylvania, Reading, Pennsylvania, Boulder, Colorado, Phoenixville, Pennsylvania, Oakland, California, Staunton, Virginia, Birmingham, Alabama, as well as state

---

[10] The district court in *Wolford v. Lopez*, 2023 WL 5043805 (D. Haw. August 8, 2023), found that firearms restrictions in public parks and beaches were not part of a "historical tradition" of regulation.  The *Wolford* court based its conclusion on the fact that the State failed to produce any evidence regarding whether "parks" as we know them today existed at the time the Fourteenth Amendment was ratified and failed to introduce sufficient evidence of any historical regulation of firearms in such settings.  *Id*. at *21-22.  The *Wolford* court also rejected evidence of firearms regulations in parks passed *after* the ratification of the Fourteenth Amendment, despite the *Bruen* court leaving the issue open.  *Id*. at *22.  The *Wolford* court disagreed with the analysis in *Maryland Shall Issue* on similar grounds.  As discussed herein, this analysis is incorrect.

laws in Minnesota, Wisconsin, and North Carolina.  *Id.* at *11. Territorial New Mexico had its own law making it "unlawful for any person to carry deadly weapons, either concealed or otherwise, on or about their persons within any settlements of this Territory" unless they were threatened with imminent danger of an attack on themselves, family or property.  1869 Terr. of N.M. Laws ch. 32, § 1.[11]  Texas similarly prohibited firearms in numerous public venues and social gatherings.  1871 Texas Gen. Laws ch. 34, § 1.   The Supreme Court of Texas upheld the law, finding arguments to the contrary "little short of ridiculous."  *English v. State*, 35 Tex. 473, 476 (1871).  The opinion was cited approvingly by Justice Scalia's majority opinion in *District of Columbia v. Heller*, 128 S. Ct. 2783, 2817 (2008).

The regulations regarding public parks in the Amended PHO are historically analogous to prior regulations prohibiting guns in public parks both before and after the ratification of the Fourteenth Amendment.  Plaintiffs attempt to limit their focus to regulations that existed solely in the eras "especially before and immediately after the Founding Era," but this narrow interpretation flies in the face of *Bruen*.[12]  As the *Bruen* court noted, present-day firearm regulations that were

---

[11] Although *Bruen* discounted the impact of territorial restrictions on firearms, subsequent research and legal analysis has suggested that because territories were subjected to the Second Amendment well before the Fourteenth Amendment made it applicable to the states, this approach may have been short-sighted.  *See Atkinson v. Garland*, 70 F.4th 1018, 1036 (7th Cir. 2023); Andrew Willinger, *The Territories Under Text, History and Tradition*, 101 Wash. U. L. Rev. 1, at 13-21.

[12]  It is also historically incorrect, which is important in the context of *Bruen*.  There were no modern-style parks at the time of the Founding Era.  "Parks" such as Boston Common, were used primarily as a pasture, a place for public executions, and a site for the militia to muster and drill. Steven R. Pendery, *Probing the Boston Common* 43 ARCHAEOLOGY 42-47 (1990); Suzanne Scheld et. al, RETHINKING URBAN PARKS: PUBLIC SPACE AND CULTURAL DIVERSITY, 19-20 (2009); Michael Rawson, EDEN ON THE CHARLES: THE MAKING OF BOSTON, 73 (2014).  Notably, in Colonial Massachusetts, militia members were prohibited from coming to muster with a loaded firearm.  *See* RECORDS OF THE GOVERNOR AND COMPANY OF THE MASSACHUSETTS BAY IN NEW ENGLAND, 98 (1853) and 1866 Mass. Acts 197, An Act Concerning the Militia, § 120.

"unimaginable at the founding" may still be upheld if they are consistent with the "historical tradition of firearm regulation." 142 S. Ct. at 2132.  In addition, while the Supreme Court left open the question of whether historical regulations from the time the Second Amendment was ratified in 1791, or the ratification of the Fourteenth Amendment in 1868 were entitled to greater consideration, the Court pointedly noted that "[s]trictly speaking, states are bound to respect the right to keep and bear arms **because of the Fourteenth Amendment, not the Second**." *Id.* at 2137 (internal quotation marks omitted) (emphasis supplied).  Accordingly, courts conducting historical analysis in the wake of *Bruen* have determined that historical sources from the time of the ratification of the Fourteenth Amendment in 1868 are "equally if not more probative of the scope of the Second Amendment's right to bear arms as applied to the states by the Fourteenth Amendment." *Maryland Shall Issue*, 2023 WL 4373260, at *8. As the right to carry a firearm in a public park has historically been regulated during all relevant time periods, the Amended PHO's public park restrictions are constitutional under *Bruen*.  Accordingly, because Plaintiffs cannot establish that they are likely to succeed in challenging any of the Amended PHO's provisions, their Second Motion should be denied.

## <u>Conclusion</u>

For the foregoing reasons, the Court should deny plaintiffs' requests for preliminary injunctive relief.

Respectfully submitted,

*/s/ Holly Agajanian*
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan Grisham*

490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
holly.agajanian@exec.nm.gov

*Counsel for Governor Michelle Lujan Grisham,
Secretary Patrick M. Allen, Secretary Jason R.
Bowie* and *Chief W. Troy Weisler*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2023, I filed the foregoing via the CM/ECF filing system,

which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Holly Agajanian*
Holly Agajanian

20