**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

WE THE PATRIOTS, INC,
DENNIS SMITH,                                             No. 1:23-cv-00773-DHU-LF

        Plaintiffs,                                     Consolidated with:

                                               No. 1:23-cv-00771-DHU-LF
                                               No. 1:23-cv-00772-DHU-LF
                                               No. 1:23-cv-00774-DHU-LF
vs.                                                     No. 1:23-cv-00778-DHU-LF
                                               No. 1:23-cv-00839-DHU-LF

MICHELLE LUJAN GRISHAM,
in her official capacity only, PATRICK
M. ALLEN, in his official capacity only,
JASON R. BOWIE, in his official
capacity only,  TROY WEISLER, in his
official capacity only, HAROLD
MEDINA, in his official capacity only,

        Defendants.

**ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

     In this consolidated action, Plaintiffs, individual firearm owners and Second Amendment

advocacy organizations (collectively "Plaintiffs"),[1] have moved for a preliminary injunction

---

[1] The following cases were filed with complaints, motions for temporary restraining orders (TRO), and preliminary injunctions on September 9, 2023: *National Association for Gun Rights et al. v. Michelle Lujan Grisham et al.* (1:23-cv-00771-DHU-LF), *Randy Donk et al. v. Michelle Lujan Grisham et al.* (1:23-cv-00772-DHU-LF), and *We the Patriots et al. v. Michelle Lujan Grisham et al.* (1:23-cv-00773-DHU-LF*). Shawn Blas v. Grisham et al.* (1:23-cv-00774-DHU-LF) was filed with a complaint, motion for a TRO, and preliminary injunction on September 10, 2023.  *Zachary Fort et al. v. Michelle Lujan Grisham et al.* (1:23-cv-00778-DHU-LF) was filed with a complaint, motion for a TRO, and a preliminary injunction on September 11, 2023. *Richard M. Anderson v. Michelle Lujan Grisham et al.* (1:23-cv-00839-DHU-LF) was filed with a complaint and a request for a TRO and a preliminary injunction on September 26, 2023.

pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.  They seek to enjoin enforcement of the New Mexico Department of Health's "Amended Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" issued on October 6, 2023.[2] The Court held a hearing on October 3, 2023, addressing a previous order that raised the same legal issues and heard oral argument on the motions.  For the reasons stated below, the Court will **DENY** Plaintiffs' motion.

## I.
## BACKGROUND

### A.  The Second Amendment

In 1791, Congress ratified the Second Amendment to the Constitution of the United States, along with nine other amendments that form the Bill of Rights.  The text of the Second Amendment reads in full:

> A well-regulated Militia, being necessary to the security of a free
> State, the right of the people to keep and bear Arms, shall not be
> infringed.

U.S. CONST. amend. II.  At the time of its ratification, "the Second Amendment [ ] applied only to the Federal Government." *McDonald v. City of Chicago*, 561 U.S. 742, 754, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010).  However, in 1868, Congress ratified the Fourteenth Amendment and, thereafter, the Supreme Court of the United States "eventually incorporated almost all of the provisions of the Bill of Rights," to the States, including the Second Amendment right to keep and

---

[2] Plaintiffs filed motions or supplemental briefs directed at two previous Public Health Orders (one issued on September 8, 2023 and another issued on September 15, 2023). However, only one Plaintiff – We the Patriots Inc – filed a motion in response to the most recent Amended Public Health Order (issued on October 6, 2023). In any event, the arguments from the first two sets of briefing remain applicable as to the current restrictions found in the Amended Order and thus the Court will consider those arguments here.

bear arms.  *Id*. at 750, 764, 130 S.Ct. 3020.   It was not until 2008, however, that the Supreme Court provided substantive interpretation of the meaning and scope of the Second Amendment.  In *District of Columbia v. Heller*, 554 U.S. 570, 581-592, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the Supreme Court thoroughly analyzed the textual language of the amendment and determined that it protects an individual right to possess a firearm unconnected to service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within the home. Two years later, in *McDonald*, 561 U.S. at 767-80, the Court confirmed that the Fourteenth Amendment made the Second Amendment right to keep and bear arms fully applicable to the States.  And, most recently, in *New York State Rifle & Pistol Association, Inc. v. Bruen*, __U.S. __, 142 S.Ct. 2111, 2122-23, 213 L.Ed.2d 387 (2022), the Supreme Court struck down a New York law that conditioned the issuance of a license to publicly carry a handgun on the existence of "proper cause," explaining that the Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home."  *Id*. at 2122.

**B.  The New Mexico Department of Health's Public Health Orders**

**1.  <u>The Executive Order and the Original Public Health Order</u>**

On September 7, 2023, New Mexico Governor Michelle Lujan Grisham ("the Governor") issued Executive Order 2023-130, declaring a state of public health emergency due to gun violence.  Exec. Order No. 2023-130, (Sept. 07, 2023) ("EO" or "Executive Order"), Doc. 1, Exhibit A.[3]  The Executive Order cited, as the basis for the declaration, that New Mexico consistently had some of the highest rates of gun violence in the nation; the rate of gun deaths in New Mexico increased 43% from 2009 to 2018, compared to an 18% increase over this same time

---

[3] All references to docket numbers refer to the docket of the lead case, 1:23-cv-00773-DHU-LF, unless otherwise noted.

period nationwide; guns were the leading cause of death among children and teens in New Mexico, and had led to the recent deaths of a thirteen-year-old girl, a five-year-old girl, and an eleven-year-old boy; New Mexico had experienced an increasing amount of mass shootings; gun-related deaths and injuries had resulted in devastating physical and emotional consequences for individuals, families and communities throughout the State; the impact of gun violence extended beyond physical injuries and fatalities, causing emotional trauma, economic burdens, and long-lasting consequences for those affected individuals and their families; and that the increasing number of gunshot victims strained New Mexico's over-burdened healthcare system and placed undue pressure on medical professionals and resources. *Id.* at 1-2. The Executive Order, among other things, directed the New Mexico State Departments of Public Health, Homeland Security and Emergency Management, and Public Safety to collaborate with the Governor's office to provide a coordinated response to implement the Executive Order.  *See id*. at 2.  The Executive Order was to "take effect immediately and [ ] remain in effect until October 6, 2023." *Id*. at 3.

The following day, on September 8, 2023, the Secretary of the New Mexico Department of Health, Patrick M. Allen ("Secretary Allen") issued a "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" ("PHO" or "Public Health Order") pursuant to his authority to preserve and promote public health and safety.  Public Health Order (N.M. Dep't of Health Sept. 8, 2023), Doc. 1 at Exhibit B. Among other prohibitions, Section (1) of the PHO temporarily restricted open or concealed possession of a firearm by any person, other than by a law enforcement officer or licensed security officer, "within cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to [the] Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from June

2022 to June 2023 according to" the Public Health Department. *Id.* at § (1)A. Section (4) of the PHO further prohibited the possession of a firearm on "state property, public schools, and public parks" unless the person carrying the firearm is a law enforcement officer or licensed security officer. *Id.* at § (4).

The PHO provided certain exceptions to the prohibition of possessing firearms depending on who the person was and where the firearm was possessed. As noted, Section (1) of the PHO did not apply to "a law enforcement officer or licensed security officer." *Id.* at § (1). The PHO also exempted possessing a firearm while on private property and firearm possession while at a licensed firearm dealer or gunsmith, possession for use at a licensed firing range or sport shooting competition, or possession of a firearm while traveling to designated locations, provided that the firearm was appropriately locked and secured rendering it inoperable. *See id.* § (1)A-E. Willful noncompliance with the PHO subjected "[a]ny person or entity" to "civil administrative penalties available at law." *Id.* at § (4).   The firearm restrictions in the PHO were temporary and were to remain in effect for the duration of the public health emergencies declared in the Governor's Executive Order, which was October 6, 2023, unless the public health emergencies were extended. *See id.* at 3, ¶ 6.

### 2.  <u>The Temporary Restraining Order Prohibiting Enforcement of the PHO</u>

On September 9, 2023, five sets of the Plaintiffs in this consolidated action ("First Set of Plaintiffs") filed suit against the Governor, Secretary Allen, the New Mexico Department of Health, and various other state and local officials and moved for a temporary restraining order and preliminary injunction seeking to enjoin enforcement of certain provisions of the PHO which restricted the possession of firearms. The First Set of Plaintiffs asserted first that the broad firearm restrictions were unconstitutional and that any such restrictions on their ability to possess firearms

in public, either openly or concealed, violated the Second Amendment of the United States Constitution.   Some of the Plaintiffs also challenged the vagueness of the PHO and argued that the PHO violated the Constitution of the State of New Mexico as well as the Federal Constitution.[4]

On September 13, 2023, this Court held a hearing on the request for a TRO and heard arguments from the First Set of Plaintiffs and Defendants. Following that hearing, the Court found the First Set of Plaintiffs had met their burden in proving the necessity of immediate injunctive relief and the Court issued an Order temporarily enjoining Defendants from enforcing Section (1) and part of Section (4) of the Public Health Order.  *See* Temporary Restraining Order, September 13, 2023, Doc. 11.  The Court's decision to temporarily restrain the enforcement of the PHO was driven by its finding that Plaintiffs had met all the factors necessary to obtain temporary injunctive relief; more specifically that, pursuant to the Supreme Court's decision in *Bruen*, Plaintiffs had shown a substantial likelihood of success on the merits as to their Second Amendment challenge to the broad prohibition of possession of a firearm in public.   *See id*. at 6-8.  The Temporary Restraining Order not only enjoined Section (1)'s broad prohibition as to the possession of firearms in the areas designated by the PHO, but also to Section (4) of the PHO to the extent that section imposed additional restrictions on the carrying or possession of firearms that were not already in place prior to the issuance of the PHO, which included public parks.  *See id.* at 11.

### 3.  <u>The Amended Public Health Order</u>

Two days after the Court's issuance of the Temporary Restraining Order, the New Mexico Department of Health issued an Amended Public Health Order which eliminated the broad restriction of carrying firearms in public but prohibited the carrying of any firearm "in public parks and playgrounds, or other public areas provided for children to play in."  Amended Public Health

---

[4] *See Blas v. Grisham*, et al, 1:23-cv-00774 DHU-LF.

Order (N.M. Dep't of Health Sept. 15, 2023) ("Amended PHO") at Section (1), Doc. 13-2. Following the issuance of the Amended PHO, some of the consolidated Plaintiffs filed requests for ex parte TRO's and preliminary injunctions directed at the Amended PHO. *See* Doc. 13; *Anderson v. Grisham et al*., 1:23-cv-00839-DHU-LF, Doc. 1. The Court denied both requests for ex parte temporary restraining orders without a hearing, finding that the requests to enjoin the firearm restriction at public parks was superfluous and unnecessary because the Court had already temporarily enjoined that restriction and finding that, given the lack of legal support in the ex parte motions, Plaintiffs did not show a substantial likelihood of success on the merits of their challenge to the restriction on playgrounds and other public areas provided for children to play in.  *See* Order Denying Temporary Restraining Order and Request for Hearing, Doc. 15 and Order Denying Temporary Restraining Order, 1:23-cv-00839-DHU-LF, Doc. 2.

On October 3, 2023, the Court held a hearing on the motions for preliminary injunction directed at the Amended PHO. [5] Clerk's Minutes, Doc. 20.  At the hearing, the Court denied the First Set of Plaintiffs' motions for preliminary injunction regarding the original PHO on the grounds of mootness, given that the broad prohibition of the possession of firearms was eliminated by operation of the amendment to the PHO.  *See id.*  The Court did not rule on the motions for a

---

[5] Those Plaintiffs who did not file new motions for injunctive relief directed at the Amended PHO joined in the arguments made by others at the hearing on the motions for preliminary injunction or later filed supplemental briefs directed at the Amended PHO. *See* Supplemental Brief In Support of Preliminary Injunction as to the Amended Public Health Order Issued September 15, 2023, 1:23-cv-00772-DHU-LF, Doc. 26; Supplemental Motion for Preliminary Injunction, 1:23-cv-00774-DHU-LF, Doc. 19; Supplemental Motion for Temporary Restraining Order [and] Supplemental Motion for Preliminary Injunction, 1:23-cv-00778-DHU-LF, Doc. 24. Plaintiff National Association for Gun Rights filed Supplemental Motion for Preliminary Injunction, 1:23-cv-00771-DHU-LF, Doc. 18, as an "Appendix/Supplement" on September 21, 2023.

preliminary injunction as to the Amended PHO but took the issue under advisement.  The Court

then extended the Temporary Restraining Order until October 11, 2023.  *See id.*

### 4.   <u>The Second Amended Public Health Order and Revised Executive Order</u>

On October 6, 2023, before the Court could rule on the motions for preliminary injunction

directed at the Amended PHO, Defendant New Mexico Department of Health issued another

amended Public Health Order.  *See* Amended Public Health Order (N.M. Dep't of Health October

6, 2023) ("Second Amended PHO"), Doc. 25-4.  The Governor also issued a renewed Executive

Order extending the public health emergency due to gun violence until November 3, 2023.   Exec.

Order No. 2023-135, (October 6, 2023) ("Revised EO"), Doc. 25-5.  The Second Amended PHO

maintains the temporary firearm restrictions as to public parks and playgrounds, but no longer

prohibits the possession of firearms in other "public areas provided for children to play in."  *See*

Second Amended PHO, Section (1).  The restrictions do not apply to law enforcement officers,

licensed security officers, active-duty military personnel, to the City of Albuquerque's Shooting

Range Park, and areas designated as a state park within the state parks system and owned or

managed by the New Mexico Energy, Minerals and Natural Resources Department State Parks

Division, or the State Land Office. *See id.*, § (1).  The Second Amended PHO also eliminated the

language that had been previously challenged as being overly vague and explicitly made the

temporary firearm restrictions applicable only to the City of Albuquerque and Bernalillo County.

*See id.*

On the same day the Second Amended Order was issued, one of the consolidated Plaintiffs

filed its Third Emergency Motion for a Preliminary Injunction, now taking aim at the Second

Amended PHO.  *See* Doc. 25.

What remains to be determined at this stage of the litigation is whether the consolidated Plaintiffs have met their burden to show that they are entitled to a preliminary injunction as to the temporary firearm restrictions remaining in the Second Amended PHO – namely, the restrictions on public parks and playgrounds.  Those restrictions are set to expire on November 3, 2023.  *See* Second Amended PHO at 3; Revised EO at 3.

## II.
## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019) (citing *U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888 (10th Cir. 1989)). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief *must be clear and unequivocal*." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (emphasis added) (citing *Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, 531 F.3d 1220, 1224 (10th Cir. 2008)).

To obtain a preliminary injunction, the moving party must establish that (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.  *See Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198–99 (10th Cir. 1992).

The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis. *Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). "Tenth Circuit decisions have linked the 'irreparable injury' inquiry to the 'likelihood of success' inquiry,

holding that a plaintiff who cannot demonstrate a substantial likelihood of success is not entitled

to a presumption of irreparable harm." *Logan v. Pub. Emps. Ret. Ass'n*, 163 F.Supp.3d 1007, 1030

(D.N.M. 2016) (Browning, J.) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1266 (10th Cir.

2005)).

## III.
## DISCUSSION

Plaintiffs now seek a preliminary injunction as to the enforcement of Defendants'

temporary firearm restrictions on the possession of firearms "either openly or concealed in public

parks or playgrounds within the City of Albuquerque and Bernalillo County."[6]  Second Amended

PHO, Section (1).   Plaintiffs make the same constitutional arguments that were directed at the

original PHO, primarily challenging, on Second Amendment grounds, the Second Amended

PHO's temporary firearm restrictions in the areas stated above.[7]

Defendants respond to the request for preliminary injunctive relief first by asserting that

Plaintiffs lack standing to challenge the Amended PHO (now the Second Amended PHO) because

most do not specifically allege or assert that they intend to carry firearms in public parks or

---

[6] As stated above, at the time of this Court's consideration of whether the Seconded Amended PHO should be preliminarily enjoined, only one Plaintiff had filed a Third Motion for Preliminary Injunction specifically targeting the Second Amended PHO.  *See* Doc. 25.  The Court thereafter consolidated this litigation and will not require any of the other Plaintiffs to file motions directed at the Second Amended PHO or the Defendants to file a response to additional motions directed at the current order before the Court decides whether it should be preliminarily enjoined.  With regard to the restrictions on public parks and playgrounds, the Court has received and reviewed substantial briefing on the issue and has had heard oral argument sufficient to make a decision on the current request for preliminary injunctive relief.

[7] Certain Plaintiffs had challenged the original PHO and the Amended PHO as being void for vagueness, arguing that they failed to provide adequate warning to individuals of ordinary intelligence as to where the possession of firearms was prohibited, both in the language concerning the geographical areas subject to the Amended PHO's restrictions and as to the prior restriction on "public areas provided for children to play in."  *See* Doc. 13-2. Those arguments, however, are now moot given the narrowing of the temporary firearm restrictions in the Second Amended PHO.

playgrounds.  Defendants then contend that, regarding the specific areas where the temporary firearm restrictions are to be enforced, Supreme Court precedent does not invalidate such restrictions.

### A. Plaintiffs' Standing to Challenge the Temporary Firearm Restrictions at Public Parks and Playgrounds.

Defendants contend Plaintiffs do not have standing to challenge the temporary firearm restrictions at issue in this request for injunctive relief.  For a plaintiff to demonstrate standing, they must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), <u>as revised</u> (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). In the case at bar, this means that Plaintiffs must demonstrate standing to challenge the distinct restrictions of the Second Amended Order, both public parks and playgrounds, and with regards to the relief requested.  *See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 185, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought"); *see also Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (determining that, notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief). "[S]tanding is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358, n. 6, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), and each plaintiff must demonstrate standing for each claim he seeks to bring and for each form of relief requested in his complaint.  *See Davis v. Federal Election Comm'n*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008).

Regarding the first requirement of the standing test laid out in *Spokeo*, when a plaintiff is challenging a law which has not yet been applied to them, as is the case for Plaintiffs here, "they

need not show that they have been subject to an actual arrest, prosecution, or other enforcement action as a prerequisite to challenging the law." *See*, *e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014); *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).  Instead, federal courts have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent. As the Supreme Court has explained, "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List*, 573 U.S. at 158-159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)).  Thus, Plaintiffs must only demonstrate that there is a real threat of enforcement and subsequent injury if they were to engage in their constitutionally protected activity.

Considering the above law regarding standing, two of the Plaintiffs in this consolidated action have satisfied the standing requirement for preliminary injunctive relief as to restrictions on public parks and playgrounds.   In his sworn affidavit submitted to the Court, Plaintiff Donk testified,

> I carry my handgun with me every day, everywhere it is lawful to do so… I regularly walk my dog into and through public parks. In one of these locations, access along the paved path to the dog area requires traveling through a playground. There is no other reasonable way for me to access this area of the park that is set aside for dogs (not children) to play…I frequently visit public parks, playgrounds, and public areas provided for children to play in with my grandchildren.

Pl.'s Suppl. Br., 1:23-cv-00772, Doc. 26-1, at 2. This testimony is sufficient to allege an injury in fact given that the order could be enforced against him for carrying a firearm in these locations,

that injury would be traceable to the Second Amended Order, and could be resolved by a favorable order from this Court.

In addition, Plaintiff Smith submitted an affidavit in which he testified that:

> I regularly carry a loaded handgun in a holster on my body for the purpose of self-defense whenever I leave my home and I am out and about in Albuquerque … I also engage in recreation on a weekly basis at New Mexico public parks – primarily Los Poblanos Open Space in Albuquerque, New Mexico… I regularly carry my handgun when I use Los Poblanos Open Spaces in order to protect myself from wild coyotes, stray dogs, and potential human attackers… I am a grandfather, and I occasionally visit playgrounds with my grandchildren and attend various recreational events that they are involved in at various places where children play in the City of Albuquerque.

Suppl. Decl. of Dennis Smith, 1:23-cv-00773, Doc. 24 at 2. Again, this testimony satisfies the three requirements necessary to establish standing as Plaintiff Smith has shown facts sufficient to demonstrate that he intends to engage in a course of action where there exists a credible threat of prosecution.

The remaining Plaintiffs have not provided sufficient information to establish standing to challenge the Second Amended Order in its entirety. Plaintiff Haines and Fort only testify to regularly carrying firearms in parks, and Plaintiffs Blas and Anderson do not mention carrying guns in either public parks or playgrounds.  Plaintiff Haines and Fort thus have standing to challenge the Second Amended Order as it applies to public parks but lack standing to request preliminary injunctive relief for playgrounds, and Plaintiffs Blas and Anderson lack standing to request preliminary injunctive relief for both parks and playgrounds.  Nevertheless, the Court will determine whether preliminary injunctive relief is appropriate in this consolidated action because two Plaintiffs have demonstrated that they have standing to challenge both restrictions at issue.

**B.  Preliminary Injunction Factors and the Firearm Restrictions.**

Whether Plaintiffs are entitled to the extraordinary remedy of a preliminary injunction depends on whether they can meet the factors outlined in *Resolution Trust Corp.*, 972 F.2d at 1198–99, including, most importantly, showing that they have a substantial likelihood of success on the merits of their claims and, in the absence of injunctive relief, they will suffer irreparable injury.  If Plaintiffs can show that there is a substantial likelihood they will succeed on their constitutional challenge to the firearm restrictions at issue here, then the other factors necessary to obtain a preliminary injunction will necessarily favor Plaintiffs.  *See Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citation and internal quotation marks omitted). The Court will thus focus first on whether Plaintiffs have shown, clearly and unequivocally, that they have shown a substantial likelihood of success on the merits of their constitutional claims.

### 1.   The Temporary Firearm Restrictions at Public Parks

Relying heavily on the Supreme Court's decision in *Bruen* and the post-*Bruen* district court decisions in *Koons v. Platkin*, 2023 WL 3478604 (D.N.J. 2023) and *Antonyuk v. Hochul*, 639 F.Supp.3d 232, 324 (N.D.N.Y. 2022), *reconsideration denied sub nom*, *Antonyuk v. Negrelli*, No. 122CV0986GTSCFH, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022), Plaintiffs argue that the temporary firearm restrictions at public parks clearly violate the Second Amendment.

In *Bruen*, the Supreme Court held that a New York statute which conditioned the issuance of an unrestricted license to publicly carry a handgun on the existence of "proper cause," violated the Second and Fourteenth Amendments.   142 S.Ct. at 2122-23.  The Supreme Court explained that the Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home."  *Id.* at 2122.  In coming to that conclusion, the *Bruen* Court rejected the means-

end inquiry that had previously been used by the Courts of Appeals in evaluating the constitutionality of gun restrictions, *see id*. at 2126-27, and instead adopted a new two-part test to determine whether a restriction passed constitutional scrutiny under the Second Amendment. *Id*. at 2129-30. In the first step, a court reviewing a restriction must determine "whether the Second Amendment's plain text covers an individuals' conduct" – if it does, "the Constitution presumptively protects that conduct." *Id.* at 2130. In the second step, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only if the government makes such a showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* (citation and internal quotations omitted).

In this case, there seems to be no dispute that the first step outlined in *Bruen* has been met because the Second Amendment's text covers the individual Plaintiffs' conduct in this case. As the *Bruen* Court explained, "[t]he Second Amendment's plain text [ ] presumptively guarantees [law abiding citizens] a right to bear arms in public for self-defense." *Id.* at 2135. Here, the Second Amended PHO purports to restrict such persons from bearing arms in public parks and playgrounds, implicating the guarantees of the Constitution and the command of the Second Amendment. Where the parties do diverge, however, is whether under *Bruen's* second step of the analysis, Defendants can justify their temporary firearm restrictions by demonstrating that they are consistent with the Nation's historical tradition of firearm regulation. Plaintiffs urge this Court to join the district courts in *Antonyuk* and *Koons* and reject any argument that the restriction of firearms in public parks is consistent with this history. Defendants, on the other hand, argue that the correct analysis can be found in another post-*Bruen* case, *Maryland Shall Issue v. Montgomery Co.*, 2023 WL 4373260 (D. Md. 2023). In that case, the district court upheld Montgomery

County's similar restrictions based on the historical evidence of gun restrictions on public parks during and after the Reconstruction Era.  *See id*. at *11.

To begin with, it is important to determine the types of historical sources to be considered when analyzing the historical evidence of state law firearm restrictions on public parks.  In *Bruen*, the Supreme Court explicitly acknowledged that "there is an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope."  142 S. Ct. at 2138.  The *Bruen* Court, however, declined to resolve that debate because the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry. *See id*.

For the purposes of this Court's analysis, the Court agrees with the Eleventh Circuit Court of Appeals and the district court in *Maryland Shall Issue* that historical sources from the period of the ratification of the Fourteenth Amendment in 1868 are more probative of the scope of the Second Amendment's right to bear arms than those from the Founding Era.  *See National Rifle Association v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023); *Maryland Shall Issue*, 2023 WL 4373260 at *8.  As the Eleventh Circuit explained, this is so "because the Fourteenth Amendment is what *caused* the Second Amendment to apply to the States, [thus] the Reconstruction Era understanding of the right to bear arms—that is, the understanding that prevailed when the States adopted the Fourteenth Amendment—is what matters."  *Id*.

In *Antonyuk*, *Koons*, and *Maryland Shall Issue*, each of these district courts discussed, to varying extents, the historical evidence of gun restrictions at public parks during the time of the ratification of the Fourteenth Amendment.  In *Antonyuk*, the court observed two state laws, one from Texas in 1870 and one from Missouri in 1883, and city laws and regulations from New York City, N.Y., Philadelphia, Pa., Chicago, Ill., St. Louis, Mo. and St. Paul, Minn., which restricted the

carrying of firearms in public parks during and after the ratification of the Fourteenth Amendment. *See Antonyuk*, 639 F.Supp.3d at 324.  The district court there determined that two state laws could not represent a national tradition that was established and representative of the Nation.  *See id*.  As to the city laws restricting firearms, the *Antonyuk* court noted that they arguably supported a historical tradition of banning firearms in public parks in cities but could not establish a historical tradition of such bans in public parks outside of a city.  *See id*. at 325.

In *Koons*, the district court acknowledged that the state (New Jersey) had presented "many laws - mostly local ordinances – from the 19th and 20th century restricting firearms at parks." *Koons*, 2023 WL 3478604 at *82.  The court, however, determined it would only consider those laws that were closer in time to the ratification of the Fourteenth Amendment.  *See id*. at *84. Once that limitation was considered, the court recognized only one state law and about 25 local ordinances from this time frame, which the court found to be insufficient to establish a historical tradition of banning firearms at parks, rendering the New Jersey gun restrictions on public parks unconstitutional.

However, in *Maryland Shall Issue*, the district court reached a different conclusion.  In its analysis, the court determined there existed "numerous historical statutes and ordinances from the time period before and following the ratification of the Fourteenth Amendment [that] imposed [firearm] restrictions in relation to parks." 2023 WL 4373260 at *11.  The Maryland court observed that, during that time period, cities including New York, N.Y., Philadelphia, Pa., Detroit, Mich., Chicago, Ill., Saint Paul, Minn., Williamsport, Pa., Wilmington, Del., Reading, Pa., Boulder Colo., Trenton, N.J., Phoenixville, Pa., Oakland, Cal., Staunton, Va., and Birmingham, Ala., all maintained regulations that prohibited firearms within public parks.  *See id*.  At the state level, the court found that at least three states – Minnesota, Wisconsin, and North Carolina had prohibited

the carrying of firearms at public parks not long after the ratification of the Fourteenth Amendment. *See id*.  According to the Maryland court, "These laws which [ ] categorically bar the carrying of firearms in parks, demonstrate that there is 'historical precedent' from before, during and after the ratification of the Fourteenth Amendment that 'evinces a comparable tradition of regulation' of firearms in parks." *Id.* (citing *Bruen*, 142 S. Ct. at 2131-32).  The firearm restriction as to public parks was therefore not at odds with the Second or Fourteenth Amendment.  *See id*.

In this case, Defendants cite to all the historical evidence presented by the court in *Maryland Shall Issue* to justify the temporary firearm restrictions in their Second Amended Public Health Order.  Defendants assert that, as the right to carry a firearm in a public park has historically been regulated during the relevant time period, the public park restrictions are constitutional under *Bruen*.  Doc. 21 at 19.

Whether or not this Court will ultimately agree that Defendants can justify their temporary firearm restrictions under the second step of the *Bruen* analysis remains to be seen. When all of the laws and ordinances cited by *Antonyuk*, *Koons*, and *Maryland Shall Issue* are combined and tallied, it appears plausible, although not certain, that Defendants may be able to demonstrate a national historical tradition of firearm restrictions at public parks within cities, as observed to arguably be the case by the court in *Antonyuk* as well as the court in *Maryland Shall Issue*.  *See Antonyuk*, 639 F.Supp.3d at 325.   Plaintiffs, for the most part, say very little about the firearm restrictions at public parks in and around the time of the ratification of the Fourteenth Amendment or thereafter, except to disagree that this is the correct time frame under which to perform the *Bruen* historical traditions analysis and to point out that "two other district courts have found that the local park ordinances up until 1890 governed less than 10% of the nation's entire population and were unrepresentative with the meaning of *Bruen*."  *See* Doc. 25-1 at 18.  It is hard to tell, at

this stage of this litigation, and in a case involving temporary firearm restrictions in public parks in one city in New Mexico, whether Plaintiffs will ultimately succeed on the merits of their Second Amendment claim.  They may very well do so.  But the Court finds that, given the different analysis of the historical evidence by three district courts which have considered the issue post-*Bruen*, it cannot be said that Plaintiffs' right to relief is "clear and unequivocal." *Dine Citizens*, 839 F.3d at 1281.  Plaintiffs have thus not shown a substantial likelihood of success on the merits of their Second Amendment challenge to Defendants' temporary firearm restrictions at public parks sufficient to obtain the extraordinary relief of a preliminary injunction.

### 2.  The Temporary Firearm Restrictions on Playgrounds

Defendants also request that the Court preliminarily enjoin the Defendants from enforcing the Second Amended Public Health Order's temporary firearm restrictions on playgrounds, but say very little about why they have a substantial likelihood of success in their constitutional challenge to such restrictions other than to proclaim playgrounds do not resemble the historical "sensitive places" analogues referenced by the Supreme Court.  The Court disagrees.

There is no question that the Second Amendment protects the possession and carrying of firearms for self-defense in the home and in public, but, as the Supreme Court has explained, it is not absolute:

> Like most rights, the right secured by the Second Amendment is not *unlimited*. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.

*Heller*, 554 U.S. at 626.  The *Bruen* Court cited this passage of *Heller,* agreeing that although "the Second Amendment protect[s] an individual right to armed self-defense, we [have] also relied on the historical understanding of the Amendment to demark the *limits* on the exercise of that right."

*Bruen,* 142 S. Ct. at 2128 (emphasis added). "To be clear, analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." *Id.* at 2111. Given the Supreme Court's admonitions, it is clear that the Second Amendment does not constitute a general pass for any individual to use and carry firearms in anyway or anyplace that individual sees fit.

In holding that the Second Amendment conferred an individual right to keep and bear arms in the home, the Supreme Court in *Heller* was careful to explain that it's holding was not meant to overrule long standing exceptions to the Second Amendment:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms **in sensitive places** *such as* **schools and government buildings**, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626–27 (emphasis added). Thus, the *Heller* Court recognized that exceptions to the protections of the Second Amendment included the longstanding prohibition of firearms in "sensitive" places *such as* schools or government buildings.[8]

This position was reaffirmed in *Bruen*, in which the Supreme Court clarified that their decision did nothing to overrule *Heller's* recognition of the sensitive places doctrine:

> Consider, for example, *Heller*'s discussion of longstanding laws forbidding the carrying of firearms in sensitive places such as

---

[8] The Supreme Court's use of "such as" is illuminating: the term is illustrative and non-exhaustive, meant to give some examples of sensitive places that lawmakers and lower-court judges could use as a guidepost for determining whether certain firearm regulations violated the Second Amendment. *See United States v. Morrow*, 79 F.4th 1169, 1174 (10th Cir. 2023) (holding that the term "such as" in Fed. R. Evid. 404(b)(2) was used to illustrate permissible uses of other-act evidence, but was not exhaustive); *see also United States v. Armijo*, 38 F.4th 80 (10th Cir. 2022).

schools and government buildings… Although the historical record yields relatively few 18th- and 19th-century "sensitive places" where weapons were altogether prohibited—*e.g.,* legislative assemblies, polling places, and courthouses—we are also aware of no disputes regarding the lawfulness of such prohibitions. … We therefore can assume it *settled* that these locations were "sensitive places" where arms carrying could be prohibited consistent with the Second Amendment. And courts can use analogies to those historical regulations of "sensitive places" to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible.

*Bruen*, 142 S. Ct. at 2133 (internal citations omitted) (emphasis added). The Supreme Court again confirmed it is settled law that the sensitive places doctrine is consistent with the Second Amendment, and nothing in its holdings in *Heller* or *Bruen* were meant to disturb judicial recognition of that exception to the Second Amendment's protections. The *Bruen* Court not only added additional examples to the non-exhaustive list of potentially sensitive places, it encouraged the lower courts to use historical analogies to the enumerated "sensitive" places in order to determine if new regulations are constitutionally permissible. *See id*.

Given the Supreme Court's clear invitation for lower courts to conduct their own analogues analysis under the sensitive places doctrine, this Court finds that playgrounds are "sensitive places" and are excepted from the Second Amendment's commands.  As other courts have noted, playgrounds are often associated with schools and therefore the inference that they are sensitive places under *Bruen* is appropriate. *See, e.g. Siegel v. Platkin*, 2023 WL 1103676, at *10 (D.N.J. Jan. 30, 2023) ("schools and playgrounds intersect, that is, playgrounds fall within the sphere of schools. Therefore, under *Bruen*, the Court 'can assume it settled' that playgrounds are a 'sensitive place.'") (quoting *Bruen*, 142 S.Ct. at 2133).

Like with public parks, the holdings of *Bruen* and *Heller* did not directly deal with the issue of firearms in playgrounds.  Plaintiffs rely primarily on various district court opinions to assert

their argument that playgrounds are not sensitive places, including *Antonyuk*, *Koons*, *Siegel*, *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805 (D. Haw. Aug. 8, 2023). However, while each of these district courts enjoined similar laws to the Second Amended PHO as they pertained to public parks, they were largely silent on the issue of playgrounds and if the courts did comment on playgrounds it was to assert that they *were* sensitive places. *See Antonyuk, 639 F.Supp.3d at 324*; *Koons*, 2023 WL 3478604 at *82 ("For playgrounds, the parties have not persuaded this Court to change its earlier ruling allowing the State to ban firearms at playgrounds during this litigation").[9]

This Court also rejects the argument that schools are only recognized as sensitive places because a "core government" function occurs within them (i.e., the education of children) and playgrounds (and parks) do not fit within that exception because no government functions occur in such places. Doc. 25, at 8. While Plaintiffs' commentary on Cicero's defense of Milo is interesting, as is their analysis of Medieval history, it ultimately has no bearing on a modern legal analysis of sensitive places doctrine and Plaintiff cites no case law which supports their "core government function" theory as to sensitive places. In *Antonyuk*, one of the district decisions relied upon by Plaintiffs for their arguments regarding restrictions at public parks, the court concluded that public schools (and, by analogy, playgrounds) were not sensitive places because they involved a government function, but rather because they both contained a vulnerable population – children. *See Antonyuk,* 639 F.Supp.3d at 324 (holding that public parks were analogous to schools given that both places often contain children and therefore constituted protected sensitive places).

---

[9] The *Wolford* cases cited by the Plaintiffs was completely silent on the issue of playgrounds, and they refused to enjoin the Hawaii law as it applied to playgrounds.

Given the Supreme Court's recognition of schools as sensitive places and the sound analogy between schools and playgrounds stated in *Antonyuk*, the Court finds that the recognition of what constitutes a sensitive place could very well be determined by the type of function occurring at those locations as well as whether a vulnerable population – such as children – utilize such locations. Plaintiffs have provided no legal support for their contention that sensitive places can only be tied to places where core government functions are conducted.

For these reasons, the Court finds that Plaintiffs have not proved a substantial likelihood of success on the merits regarding their challenge to the temporary restriction of firearms on playgrounds.

## IV.
## CONCLUSION

Because the Court has found that Plaintiffs have not shown a substantial likelihood of success on the merits of their challenge to the Second Amended PHO's temporary firearms restrictions, it need not evaluate the remaining factors necessary to obtain a preliminary injunction. *See Denver Homeless Out Loud v. Denver, Colorado,* 32 F.4th 1259, 1278 (10th Cir. 2022) ("an injunction can issue only if each factor is established.") (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

Therefore, for the reasons stated herein, Plaintiffs' Motion for a Preliminary Injunction [Doc. 25] is **DENIED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE