IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| WE THE PATRIOTS USA, INC., *et al.*<br>    *Plaintiffs*,<br><br>v.<br><br>MICHELLE LUJAN GRISHAM, individually and in her official capacity as the Governor of New Mexico, *et al.*,<br>    *Defendants*. | : No. 1:23-cv-00773-DHU-LF<br>:<br>:<br>:<br>: Consolidated with:<br>:<br>: No. 1:23-cv-00771-DHU-LF<br>: No. 1:23-cv-00772-DHU-LF<br>: No. 1:23-cv-00774-DHU-LF<br>: No. 1:23-cv-00778-DHU-LF<br>: No. 1:23-cv-00839-DHU-LF<br>:<br>: |

### EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

Pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1), Plaintiffs, Zachary Fort, Firearms Policy Coalition, Inc., Second Amendment Foundation, and New Mexico Shooting Sports Association, Inc., respectfully request that this Court enter an injunction pending appeal prohibiting Defendants from taking any action to carry out the provisions of the current public health order making it unlawful to carry firearms for self-defense in public parks in Albuquerque and Bernalillo County, New Mexico. As set forth herein, Plaintiffs seek an emergency ruling because they are suffering and will continue to suffer irreparable harm from the effects of the current public health order.

### BACKGROUND

On October 6, 2023, the New Mexico Department of Health issued an Amended Public Health Emergency Order Imposing Firearm Restrictions, Drug Monitoring and Other Public Safety Measures ("Amended PHO"). On October 11, 2023, this Court denied Plaintiffs' motion

for a preliminary injunction, which sought to enjoin enforcement of the Amended Order's restrictions on carrying firearms for self-defense in public parks and playgrounds in Albuquerque and Bernalillo County. *See* Order on Plaintiffs' Motion for Preliminary Injunction, entered October 11, 2023 (Doc. 27) ("Order"). Plaintiffs noticed an interlocutory appeal to the United States Court of Appeals for the Tenth Circuit on October 20, 2023 (Doc. 33).

## REQUEST FOR EXPEDITED DECISION

Under Federal Rule of Appellate Procedure 8(a)(1), a "party must ordinarily move first in the district court" before seeking "an order . . . granting an injunction while an appeal is pending" from the court of appeals. However, Plaintiffs recognize that this Court is unlikely to grant such relief, given that the four-factor test governing Plaintiffs' entitlement to an injunction pending appeal "is subject to the exact same standards" that this Court applied in denying Plaintiffs' motion for a preliminary injunction. *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015) (citing *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) ("In ruling on such a request, this court makes the same inquiry as it would when reviewing a district court's grant or denial of a preliminary injunction.")); 10th Cir. R. 8.1(B) to (E). Because this Court has already assessed those factors, Plaintiffs respectfully request an expedited decision on the instant motion given the fundamental nature of the right being denied.

## ARGUMENT

In evaluating a motion for entry of an injunction pending appeal, the court must consider: (1) whether the movants have made a strong showing that they are likely to prevail on the merits of their appeal; (2) whether the movants will be irreparably injured if the injunction is not granted; (3) whether granting the injunction will substantially harm the opposing parties; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724

2

(1987); *accord Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66, 208 L. Ed. 2d 206 (2020) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)); 10th Cir. R. 8.1(B)-(E). "There is substantial overlap between these and the factors governing preliminary injunctions, not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009).

Plaintiffs respectfully disagree with certain conclusions in the Court's Order. As set forth in Plaintiffs' motion and supplemental motion for preliminary injunction, Plaintiffs have made a strong showing of likelihood of success on the merits of their appeal, that they will be irreparably harmed without an injunction pending appeal, and that the balancing of equities weighs heavily in favor of granting such relief pending appeal.

**I. The Amended PHO's Ban on Carriage in Public Parks is Unconstitutional.**

In the Order, the Court agreed with the Eleventh Circuit and the district court in *Maryland Shall Issue* in finding "that historical sources from the period of the ratification of the Fourteenth Amendment in 1868 are more probative of the scope of the Second Amendment's right to bear arms than those from the Founding Era." *See* Order (Doc. 27, p. 16) (citing *National Rifle Association v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023), *vacated by granting rehearing en banc*, F.4th 1346 (11th Cir. 2023) and *Maryland Shall Issue v. Montgomery Cnty.*, 2023 WL 4373260 at *8 (D. Md. July 6, 2023)). However, the adoption of such an approach is misplaced and consequently the Court focuses on the wrong historical period for its analysis.

Under *Bruen*, the relevant period for determining the meaning of the Second Amendment is the Founding era, and "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." 142 S. Ct. at 2154; Mark W.

3

Smith, *"Not All History Is Created Equal": In the Post-*Bruen *World, the Critical Period for Historical Analogues Is When the Second Amendment Was Ratified in 1791, and Not 1868*, HARV. J. OF L. & PUB. POL'Y PER CURIAM (Oct. 1, 2022), https://bit.ly/3CMSKjw.  Both *Bondi* and *Maryland Shall Issue* are outliers in treating 1868 as the key date when assessing the validity of a state law under the Second Amendment.

The focus in *Bondi* and *Maryland Shall Issue* on 1868 as the controlling date is inconsistent with the acknowledgment in *Bruen* that the Supreme Court had always "assumed that the scope of the protection [of the Bill of Rights] . . . is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." 142 S. Ct. at 2137–38.  In *Worth v. Harrington*, the district court concluded that *Bondi* (and by extension, *Maryland Shall Issue*) "declined to follow rather clear signs that the Supreme Court favors 1791 as the date for determining the historical snapshot of 'the people' whose understanding of the Second Amendment matters." 2023 U.S. Dist. LEXIS 56638, at *29, 2023 WL 2745673, at *10-12 (D. Minn. Mar. 31, 2023) (citing *Bruen*, 142 S. Ct. at 2137–38).  The district court in *Worth* also noted that such an approach ignores *Bruen*'s warning "against giving postenactment history more weight than it can rightly bear." *Id*.  Further, the court found that *Bondi* is "difficult to square with the Supreme Court's emphasis on applying the Bill of Rights against the states and federal government according to the same standards." *Id*.  "[L]ate-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence" nor can "20th-century historical evidence" provide any insight. *Bruen*, 142 S. Ct. at 2154 & n.28.

Plaintiffs further disagree with the Court's conclusion that Defendants may be able to plausibly "demonstrate a national historical tradition of firearm restrictions at public parks within cities, as observed to arguably be the case by the court in *Antonyuk* as well as the court *in Maryland*

4

*Shall Issue*." *See* Order (Doc. 27, p. 16).  In *Antonyuk v. Hochul*, the district court, looking to the same laws that *Maryland Shall Issue* analyzed, concluded they were insufficient to "constitute a tradition that was *representative* of the Nation" because, even at the late date when they began appearing, such laws applied to a small minority of Americans.  *Antonyuk*, 639 F. Supp. 3d 232, 326 (N.D.N.Y. 2022).  In *Koons v. Platkin*, the court noted that "the State has failed to come forward with any laws from the 18th century that prohibited firearms in areas that today would be considered parks." --- F. Supp. 3d ----, 2023 WL 3478604, at *83 (D.N.J. May 16, 2023).  As for later laws, the Court found that, in addition to coming too late, many were directed not at protecting parkgoers from violence but at protecting game from hunters.  *Id.* at *84.  Mindful that later history cannot contradict earlier history, the court held that "those laws arising in the mid- to late-19th century do not establish a historical tradition of banning firearms at parks especially since the modern equivalent of parks existed during the nation's founding." *Id.* at *85.

The district court in *Wolford v. Lopez*, which was decided after *Maryland Shall Issue* and rejected its reasoning, sided instead with *Antonyuk* and *Koons*, noting that "[o]ut of the seventeen laws the [*Maryland Shall Issue*] court reviewed, only one local ordinance was enacted before the Fourteenth Amendment's ratification and only one state law was enacted 'during' the time of the Fourteenth Amendment's ratification." --- F. Supp. 3d ----, 2023 WL 5043805, at *24 (D. Haw. Aug. 8, 2023).  Even looking at the later period as relevant, the court was not convinced "that there was a national historical tradition of prohibiting the carrying of firearms in parks at the time of the Fourteenth Amendment's ratification." *Id*.  Here, Defendants likewise are unable to demonstrate a national historical tradition of firearm restrictions at public parks within a city or the unincorporated areas of outside of a city.

5

## II. The Other Injunction Factors Also Favor Plaintiffs.

As Plaintiffs have previously established, the other factors supporting an injunction follow naturally from the finding that Plaintiffs' rights are being infringed. In particular, Plaintiff Fort wishes to carry firearms in parks in Bernalillo County that lie outside the city limits (to which the Albuquerque ordinance prohibiting carry firearms in City parks does not apply). Plaintiff therefore faces irreparable harm from the Amended PHO eliminating his right to carry firearms in parks in unincorporated Bernalillo County. "What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after full trial. Any deprivation of any constitutional right fits that bill." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 806 (10th Cir. 2019). That is especially true here, where the right in question is to "be[] armed and ready for offensive or defensive action in a case of conflict with another person," *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008) (quotation omitted), and the Amended PHO, by definition, target the places in New Mexico with the most "gun violence," where the right to defend oneself is most important.

Likewise, the balance of harms favors Plaintiffs since, "[w]hen a constitutional right hangs in the balance . . . 'even a temporary loss' usually trumps any harm to the defendant." *Free the Nipple*, 916 F.3d at 806. Again, that is especially true here where the Defendants have targeted law-abiding citizen's rights to try and halt the actions of criminals who will not be dissuaded by the possible imposition of "administrative and civil penalties" if they are not deterred by the threat of criminal enforcement. And last of all, "it's always in the public interest to prevent the violation of a party's constitutional rights," so the final factor favors Plaintiffs as well. *Id.* at 807 (quotations omitted).

## CERTIFICATE OF CONFERRAL

Undersigned counsel conferred with counsel for Defendants, who oppose the relief requested by this motion.

## CONCLUSION

For these reasons, and those contained in Plaintiffs' initial and supplemental motions for preliminary injunction, the Court should enter an injunction pending appeal prohibiting Defendants from taking any action to carry out the provisions of the Amended PHO.

Respectfully Submitted,

**ARAGON MOSS
GEORGE JENKINS, LLP**

By:    /s/ Jordon P. George
Jordon P. George
2201 Menaul Blvd NE
Albuquerque, NM 87107
(505) 872-3022
(505) 214-5317 (facsimile)
jordon@amgjlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 27, 2023, a copy of the foregoing was served by electronic filing with the Clerk of the Court via CM/ECF to all counsel of record.

/s/ Jordon P. George
Jordon P. George